**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **SARI SHALAKHTI**, individually, and on behalf of others similarly situated, | Case No.: 1:24-cv-12277 |
| Plaintiff, | Hon.: Sunil R. Harjani |
| vs. | Mag.: Beth w. Jantz |
| **FOUR SEASONS HEATING AND AIR CONDITIONING, INC.**, a corporation, **FOUR SEASONS HEATING & AIR CONDITIONING, LLC**, a limited liability company, and **FOUR SEASONS HEATING, AIR CONDITIONING, PLUMBING, AND ELECTRIC, LLC**, a limited liability company, | |
| Defendants. | |

**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**
**AND JURY DEMAND**

Plaintiff SARI SHALAKHTI ("Plaintiff"), hereby bring this First Amended Collective and Class Action Complaint against Defendants FOUR SEASONS HEATING AND AIR CONDITIONING, INC., FOUR SEASONS HEATING & AIR CONDITIONING, LLC, and FOUR SEASONS HEATING, AIR CONDITIONING, PLUMBING, AND ELECTRIC, LLC (collectively "Defendants") and states as follows:

**INTRODUCTION**

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), §§ 820 ILCS

1

105/1, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), §§ ILCS 115/1, *et seq.*

2.     Defendants are heating, air conditioning, plumbing and electric companies that are HVAC contractors, providing top-rated heating, air conditioning, plumbing, and electrical services with at least 5 offices throughout Chicagoland – including Chicago, Crestwood, Bridgeview, Buffalo Grove, and Elgin, Illinois servicing Chicago, West Suburbs, South Suburbs, North and Northwest Suburbs, Southwest Suburbs, and Northwest Indiana.[1] The Defendants have "served the Chicagoland area since 1971."[2]

3.     In serving "the greater Chicagoland area" Defendants employed non-exempt employees, with job titles including, but not limited to, Call Center Representatives, Salesmen, Entry Level Heating, Ventilation, and Air Conditioning ("HVAC") Technicians, Electrical Technicians, Lead HVAC Installers, Electricians, Laborers, Permit Runners, Service Technicians, Plumbers, Apprentice Plumbers, Field Operations Associates, Inside Sales Representatives, Parts Associates, and Rod Technicians (the "Installation and Service Employees"). These employees were responsible for, *inter alia*, initiating sales and service calls, installation and service of products, maintenance, and repair of HVAC, electrical, heating, and plumbing services.

4.     Defendants employed Plaintiff as a Service Technician, acting as an HVAC technician who cleans, checks, maintains and repairs HVAC units.

5.     Defendants violated the FLSA by systematically failing to compensate their Installation and Service Employees for work tasks completed after their scheduled shifts, when they were not logged into Defendants' timekeeping system. This timekeeping procedure, along with Defendants' unlawful calculation of their employees' regular rate, resulted in Installation and

---

[1] *See* https://www.fourseasonsheatingcooling.com/ (last visited November 25, 2024).
[2] *See* https://www.fourseasonsheatingcooling.com/about-us/ (last visited November 25, 2024).

Service Employees not being paid for all overtime hours worked.

6.     Defendants failed to compensate the Installation and Service Employees for the substantial time they spent off-the-clock completing the mandatory work activities before and after the scheduled shifts.

7.     More specifically, Defendants violated the FLSA by knowingly suffering or permitting Plaintiff and similarly situated employees to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of 1.5 times the regular rate.

8.     Additionally, Defendants maintained an unlawful policy of failing to properly calculate the regular rate that regularly and systematically resulted in Defendants' Installation and Service Employees, including Plaintiff, being underpaid overtime to which they are entitled.

9.     Plaintiff seeks a declaration that his rights, and the rights of the putative Collective and Class members, were violated, and a judgment awarding them unpaid back wages, liquidated damages, and attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

10.     At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendants at any time in the past three years.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

11.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

12.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any

employer … in any Federal or State court of competent jurisdiction….."

13. Moreover, this Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 class members, and at least some class members have a different citizenship than Defendants.

14. Defendants' annual sales exceed $500,000.00, and Defendants employ more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendants' employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

15. This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

16. This Court has personal jurisdiction over Defendants because Defendants maintains their headquarters in this District.

17. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1) because Defendants in this District.

18. Defendants maintain their headquarters in Cook County, Illinois; therefore, this action is properly assigned to the Eastern Division.

**PARTIES**

19. Plaintiff, Sari Shalakhti, is an Illinois resident who worked for Defendants as an hourly,non-exempt Service Technician at Defendants' Bedford Park office in Cook County, Illinois from approximately March 20, 2022, through February 5, 2024. Defendants compensated

Plaintiff through the payment of an hourly rate, most recently $20.75 per hour. Plaintiff filed a consent to join this collective action. (Doc. 1-1, PageID.31).

20.     During the past three years, additional Opt-in Plaintiffs were or are employed by Defendants as Installation and Service Employees and their consent forms will also be filed in this case.

21.     Defendant Four Season Heating and Air Conditioning, Inc., is an Illinois Corporation (File Number 58214264). Its registered agent is listed as Duggan Bertsch, LLC, 303 West Madison Street, Suite 1000, Chicago, Illinois 60606-3321.

22.     Defendant Four Seasons Heating and Air Conditioning, LLC, is an Illinois Limited Liability Company (File Number 12473974) with a principal address of 5701 W. 73rd Street, Bedford Park, Illinois 60638. Defendant Four Seasons Heating and Air Conditioning, LLC's registered agent is listed as Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703-4261.

23.     Defendant Four Season Heating, Air Conditioning, Plumbing, and Electric, LLC is an Illinois Limited Liability Company (File Number 12473974) with a principal address of 5701 W. 73rd Street, Bedford Park, Illinois 60638. Defendant Four Season Heating, Air Conditioning, Plumbing, and Electric, LLC's registered agent is listed as Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, Illinois 62703-4261.

24.     At all relevant times, Defendants were a common enterprise and "joint employers" of Plaintiff and all similarly situated individuals under the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. 791.2(a).

## <u>GENERAL ALLEGATIONS</u>

25.     Defendants maintains company offices throughout the Chicagoland area through

which their non-exempt, hourly Installation and Service Employees, including Plaintiff, provide services to Defendants' customers.

26.     Defendants have employed hundreds of Installation and Service Employees over the past three years at their offices to handle consumer and customer inquiries and requests for services.

27.     Defendants compensated their Installation and Service Employees on an hourly basis and classified them as non-exempt under the FLSA.

28.     Prior to hiring prospective Installation and Service Employees, Defendants provided them with a written offer setting forth the start date, title/reporting/hours (job requirements), offered rate of pay, benefits, and conditions of employment.

29.     Defendants maintain documents demonstrating the promised hourly wage for each Installation and Service Employees, including, but not limited to: offer letters, paystubs, and/or other payroll records.

30.     Plaintiff received an offer from Defendants to work as an Installation and Service Employee and he accepted Defendants' offer with the understanding that their base hourly rate would be paid for all hours worked.

31.     Plaintiff performed and fulfilled his duties under the contract with Defendants by carrying out his job duties and responsibilities.  More specifically, Plaintiff attended the assigned scheduled service jobs, completed the work at each site, closed out the ticket and awaited the next email from Defendants with their next job assignment.  Plaintiff additionally performed the required unpaid off-the-clock work explained below.

32.     Defendants' Installation and Service Employees were paid at varying hourly rates.

33.     Defendants' Installation and Service Employees jobs are full-time positions, and

they typically worked up to and on occasion more than, forty (40) hours per week.

34.     There were one or more instances during Plaintiff's employment when he worked forty (40) hour or more in a workweek.  More specifically, throughout Plaintiff's employment with Defendants, Plaintiff routinely worked more than 40 hours in a workweek with an average of 50-60 hours a workweek with five shifts or six shifts rotating each week each starting at 7:30 a.m. and ending between 3:00 p.m. to 7:00 p.m. depending on how long it took to finish all scheduled service jobs assigned to him that day.

35.     Once hired, Defendants provided all Installation and Service Employees, like Plaintiff with, *inter alia*, training on how to carry out their day-to-day job responsibilities including, booting up their work tablet, opening work tickets, submitting internal and external notes and closing tickets; schedule and attendance expectations, and Defendants' policies. The training that Defendants' Installation and Service Employees received was substantially, if not entirely, the same and all Installation and Service Employees were subject to the same and/or substantially similar policies and quality assurance reviews.

36.     At all relevant times, Defendants controlled the work schedules, duties, assignments, and employment conditions of Plaintiff and all other Installation and Service Employees.

37.     Plaintiff and other similarly situated Installation and Service Employees were instructed to be in transit thirty (30) minutes before the start of their scheduled shift, in order to be at their first scheduled service job of the day the moment their scheduled shift started. Additionally, similarly situated Installation and Service Employees, including Plaintiff, were instructed to finish all scheduled services job assigned to them for the day despite their scheduled shift having ended.

38.     Throughout their employment with Defendants, Plaintiff and other Installation and Service Employees were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties as stated herein.

39.     In addition to the base rate of pay, Defendants incorporated various types of routine and non-discretionary bonuses and other remuneration into their payment structure.

40.     Plaintiff and all similarly situated employees were eligible for, and regularly received, these various routine and non-discretionary bonuses in addition to their hourly rate.

41.     However, Defendants failed to include the non-discretionary bonuses and other forms of remuneration into the regular rate of pay for Plaintiff and all other similarly situated when calculating their regular rate of pay and resulting overtime rate premium.  As a result, Defendants did not pay the proper overtime rate under the FLSA.

42.     At all relevant times, Defendants used their attendance and scheduling policies against Plaintiff and their Installation and Service Employees in order to pressure them into performing off-the-clock work.

43.     All of Defendants' Installation and Service Employees perform the same or similar job duties (i.e, contacting the client with an eta, collecting payment, closing ticket, etc.) off-the-clock.  These job duties are an integral and indispensable part of their work and they cannot perform their jobs without them.

44.     The off-the-clock time Plaintiff and all other Installation and Service Employees spend to perform their assigned jobs directly benefits Defendants and it is integral and indispensable to the Installation and Service Employees job responsibilities.

45.     Despite knowing Plaintiff and all other Installation and Service Employees perform this off-the-clock work, Defendants and their managers failed to make any effort to stop or disallow

it and instead suffered and permitted it to happen.

46.     Plaintiff was instructed at the end of each week to verify his hours worked in an app Defendants used to track their Installation and Service Employees' hours.  However, there were often discrepancies and, on those occasions, Defendants instructed Plaintiff to reach out via email whereby Defendants would routinely pay Plaintiff and the other Installation Service Employees with a "bonus" equal to their unpaid hours at their base hourly rate instead of their overtime rate of 1.5 times their regular rate.

47.     Defendants possess, control, and/or have access to information and electronic data indicating that the times Plaintiff and all other Installation and Service Employees completed all service jobs provided during their shifts.

48.     Because Defendants require their Installation and Service Employees to perform work off-the-clock, the hours tracked in Defendants timekeeping system are inaccurate representations of the total amount of time Installation and Service Employees spend working for Defendants.  Thus, the hours reflected on the Installation and Service Employees' paystubs are also inaccurate representations of the hours they worked.

49.     Despite the ability to track the amount of time Plaintiff and the other Installation and Service Employees spend in connection with post-shift off-the-clock time, Defendants failed to pay Plaintiff and the other Installation and Service Employees for the off-the-clock work they performed each shift, thus breaching their contracts with their Installation and Service Employees.

50.     Defendants' non-exempt employees, Defendants' hourly employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

51.     Likewise, Plaintiff and the similarly situated Installation and Service Employees all shared, *inter alia*, similar job duties, job titles, compensation plans, job descriptions, and job

requirements.

**A.**     **Off-the-Clock Work**

52.     Pursuant to Defendants' policies, training and direction, Plaintiff and all other Installation and Service Employees are required to perform daily off-the-clock tasks such as before their start of their scheduled shift a thirty (30) minute departure/travel (tracked via GPS) wherein Plaintiff would review the service ticket from Defendants and call the client with an eta and after the end of their scheduled shift completing any scheduled service jobs, i.e. finishing the work, closing the sale, taking payment, sending internal and external notes, closing out the ticket, and waiting for the email from the dispatcher providing them with permission to go home for the day.

53.     Defendants use their attendance and scheduling policies to pressure their Installation and Service Employees into being in transit thirty (30) minutes before the start of their shift and completing their tickets past the end of their scheduled shifts. However, Plaintiff and all other Installation and Service Employees are not actually "clocked in" for their shifts until the start of the scheduled shift time and are considered "clocked out" the moment the scheduled shift time ends.

54.     Defendants Installation and Service Employees did not actually clock in or out for their shifts. Defendants compensated Plaintiff and all other Installation and Service Employees based on their schedule shift start and end times, meaning that Plaintiff and all other Installation and Service Employees worked off-the-clock for at least thirty (30) minutes before each shift and a varying amount of time at the end of each shift for which they were never compensated.

55.     Because Defendants' Installation and Service Employees typically worked scheduled shifts of at least 40 hours per week, their required off-the-clock work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

56.     Defendants had express and constructive knowledge that their Installation and Service Employees performed off-the-clock work in order to make sure they arrived to their first assigned service job on time and prepared and in order to complete all their assigned service jobs for the day.

57.     Defendants failed to pay Plaintiff and all other Installation and Service Employees for their off-the-clock work, typically overtime hours, during the workweek.  When Plaintiff and other Installation and Service Employees reported the missing overtime hours to Defendants, Defendants would sometimes "pay" a "bonus" equal to Plaintiff's and other Installation and Service Employees' unpaid hours but only at their base hourly rate instead of the FLSA mandated overtime rate of 1.5 times the regular rate.

58.     The unpaid off-the-clock work performed each shift by Plaintiff and other Installation and Service Employees is compensable, directly benefits Defendants and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Installation and Service Employees.

**B.      Defendants Breached Valid and Binding Contracts with Plaintiff and All Other Installation and Service Employees**

59.     Throughout Plaintiff's entire employment with Defendants, Defendants repeatedly and systematically breached their contract with Plaintiff by not paying Plaintiff for all hours worked, including all overtime pay required by applicable law.

60.     Defendants' failure to pay Plaintiff for each hour of work he performed and that was required of him as an Installation and Service Employee, as well as applicable overtime, was a material breach by Defendants.

61.     As a result of Defendants' breaches, Plaintiff was deprived of wages owed to him under the contract, including unpaid overtime.

62. Defendants' contractual promises to pay Plaintiff and each Installation and Service Employees' applicable hourly rate for each hour worked and 1.5 times their applicable hourly rate for all overtime worked, is evidenced by, among other things, each earnings statement issued to Plaintiff and the Installation and Service Employees.

63. Plaintiff and the Installation and Service Employees are owed wages at their applicable hourly wage rates for the time that they worked off-the-clock during their employment with Defendants, including overtime wages.

64. Plaintiff and the Installation and Service Employees earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiff and the Installation and Service Employees no later than the pay day for the period in which the off-the-clock work was performed.

65. Despite the fact that Plaintiff and the Installation and Service Employees performed the off-the-clock work when working overtime at the end of their shifts, these off-the-clock hours were not peripheral tasks for which they were not owed additional compensation. Instead, the off-the-clock work, which was performed by Plaintiff and the Installation and Service Employees pursuant to Defendants' express instructions, constituted principal work activities that were integral and indispensable to their work and required to be performed at the worksite, and Defendants were contractually obligated to pay the Installation and Service Employees for their time at the applicable regular and overtime hourly rates at which they were employed.

66. The fact that Defendants deliberately chose not to pay Plaintiff and the Installation and Service Employees for this work, and the fact that the off-the-clock work was performed when the Installation and Service Employees scheduled work shifts exceeded 40 hours per week, does not relieve Defendants of their contractual obligations to pay for the work time.

67.     Defendants were contractually obligated to pay Plaintiff and the Installation and Service Employees their applicable rates of pay for *all hours worked*, including all hours worked that exceeded 40 hours per week at the applicable overtime rate.

## C.     Defendants Benefitted from the Installation and Service Employees Off-the-Clock Work

68.     At all relevant times, Defendants have required and directly benefitted from the off-the-clock work performed by Plaintiff and all other Installation and Service Employees in connection with the off-the-clock activities described above.

69.     At all relevant times, Defendants have controlled the work schedules, duties, protocols, assignments, and employment conditions of Plaintiff and all other Installation and Service Employees.

70.     At all relevant times, Defendants have been able to track the amount of time Plaintiff and all other Installation and Service Employees spend in connection with the mandatory work activities described herein. However, Defendants often failed to do so and chose not to pay Plaintiff and the Installation and Service Employees for all of their hours worked.

71.     At all relevant times, Plaintiff and the Installation and Service Employees were non-exempt hourly employees, subject to the requirements of the FLSA and applicable state laws.

72.     At all relevant times, Defendants used their attendance and scheduling policies against Plaintiff and the Installation and Service Employees in order to pressure them into performing off-the-clock work.

73.     At all relevant times, Defendants' attendance and timekeeping policies required Plaintiff and other similarly situated employees to complete all service jobs provided during their shifts regardless of their workweek exceeding 40 hours per week to do so.  In order to do that, Plaintiff and the Installation and Service Employees had to perform work that exceeded 40 hours

per workweek oftentimes without compensation by Defendants at the applicable overtime rate.

74.     At all relevant times, Defendants' policies and practices deprived Plaintiff and the Installation and Service Employees of wages owed for the off-the-clock mandatory activities they performed.

75.     During the weeks Plaintiff and the Installation and Service Employees  worked forty (40) hours in a workweek, the outcome of Defendants' policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

76.     Defendants are in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks he worked under forty (40) hours.

77.     Despite knowing Plaintiff and the Installation and Service Employees performed off-the-clock, Defendants failed to make any effort to stop or disallow the off-the-clock work but instead suffered, permitted, and required it to happen.

78.     Unpaid wages related to the overtime work activities described herein are owed to Plaintiff at the FL at the FLSA-mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

**D.      Defendants Failed to Pay Plaintiff and Similarly Situated Employees Overtime Based on the Regular Rate of Pay**

79.     As a non-exempt employee, Plaintiff and all similarly situated employees were entitled to full compensation for all overtimes hours worked at a rate of 1.5 times their "regular rate" of pay.

80.     For example, Plaintiff's paystub for the pay period 6/1/2023 through 6/14/2023 shows a base hourly rate of $20.45, and a corresponding overtime rate of $30.68, which is 1.5 times the stated base hourly rate.  **Exhibit A**.  On this paystub, Plaintiff also earned $163.60 in

non-discretionary bonuses (labeled as "Bonus"). *Id.* However, his overtime rate does not account for the non-discretionary bonus and, therefore, Defendants violated the FLSA.

81. Under the FLSA, the regular rate is the "Keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

82. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

83. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Defendants carry the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendants' hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

84. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

85. Plaintiff's "total renumeration" included not only his base hourly pay, but also any commission pay, non-discretionary bonuses and premium pay. Indeed, 29 C.F.R. § 548.502

expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.").

86.    Defendants' shift differentials, bonuses, commissions, premium pays, and other renumeration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

87.    However, Defendants failed to incorporate these other remunerations into their hourly employees' regular hourly rate calculation, resulting in *prima facie* violations of the FLSA.

88.    Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff and those similarly situated are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

89.    Plaintiff and all similarly situated employees regularly worked in excess of 40 hours a week and have been paid some—but not all—overtime for those hours but at a rate that does not include Defendants' non-discretionary bonuses and other remuneration as required by FLSA.

90.    Defendants were required to pay Plaintiff the federally mandated overtime rate of 1.5 times his regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.  However, Defendants only paid Plaintiff 1.5 times his base hourly rate as his overtime premium, which is lower than 1.5 times his regular rate.

91.    Thus, Defendants failed to properly calculate the regular rate and violated the FLSA.

92.    Defendants paid Plaintiff, and their other Installation and Service Employees, additional non-discretionary remuneration that Defendants also failed to include in the regular rate calculation.

93.    Upon information and belief, Defendants maintained a centralized payroll system

16

which calculated the regular rate in the same manner for all similarly situated employees.

94.     Defendants knew or could have easily determined Plaintiff's appropriate overtime rates, and Defendants could have properly compensated Plaintiff at those rates, but deliberately chose not to.

95.     Plaintiff and all similarly situated employees are eligible for, and regularly receive, non-discretionary bonuses and other remuneration in addition to their base hourly rate. *See e.g.*, **Exhibit A**.

96.     As a result of these *prima facie* FLSA violations, Defendants are liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

## FLSA COLLECTIVE ACTION ALLEGATIONS

97.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> *All current and former non-exempt Installation and Service employees who worked for Defendants in the United States at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

98.     Defendants are liable under the FLSA for, *inter alia*, failing to properly pay Plaintiff and the FLSA Collective.

99.     Excluded from the proposed FLSA Collective are Defendants' executives, administrative, and learned professional employees, including computer professionals and outside salespersons.

100.    Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA Collective were not paid all overtime compensation when they worked over 40 hours in a

workweek and were not paid their proper regular rate overtime pay.

101.     Defendants assigned and/or were aware of all the work that Plaintiff and the FLSA Collective members performed.

102.     As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice included, but was not limited to:

    a.     Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for all hours worked that they worked off-the-clock in excess of forty (40) hours per workweek;

    b.     Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendants; and

    c.     Willfully failing to pay Plaintiff and the FLSA Collective the proper overtime rate by failing to use the regular rate of pay in calculating the overtime rate.

103.     Defendants were aware or should have been aware that federal law required them to pay overtime premiums to Plaintiff and the proposed FLSA Collective members for all hours worked in excess of 40 per workweek.

104.     Defendants' unlawful conduct was widespread, repeated, and consistent.

105.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

106.     The employment relationships between Defendants and every proposed FLSA

18

Collective member are the same. The key issue – the amount of unpaid overtime and the failure to properly include all remuneration in the regular rate calculation does not vary substantially among the proposed FLSA Collective members.

107. Many similarly situated current and former employees have been underpaid in violation of the FLSA and would benefit from the issuance of a Court-authorized notice of this lawsuit and the opportunity to join it.

108. Court-authorized notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

109. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' payroll records, which it is required to maintain pursuant to the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq.*

110. Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds of workers. The precise number of FLSA Collective members should be readily ascertainable from a review of Defendants' personnel and payroll records.

111. The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unaware of this case and unable to secure compensation to which they are entitled.

**RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS**

112. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

*All current and former non-exempt Installation and Service employees who worked for Defendants in Illinois at any time during the applicable statutory*

19

*period.*

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

113.    The Rule 23 Illinois Class members are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

114.    There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Illinois Class members. These common legal and factual questions include, but are not limited to:

      a.  Whether Rule 23 Illinois Class members performed unpaid overtime work activities, and if so, whether such work activities are compensable;

      b.  Whether Rule 23 Illinois Class members are owed wages for time spent performing overtime work activities, and if so, the appropriate amount thereof; and

      c.  Whether Rule 23 Illinois Class members are owed overtime wages for improperly calculated overtime rates of pay, and if so, the appropriate amount thereof.

115.    Plaintiff's claims are typical of the Rule 23 Illinois Class members' claims because Plaintiff and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

116.    Plaintiff will fully and adequately protect the Rule 23 Illinois Class members' interests and retained counsel who are qualified and experienced in the prosecution of Multi-State

wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the Rule 23 Illinois Class members' interests.

117.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

118.    This case is manageable as a Rule 23 class action. Plaintiff and his counsel know of no unusual difficulties in this case, and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

119.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

### RULE 23 MULTI-STATE CLASS ACTION ALLEGATIONS

120.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> ***All current and former non-exempt Installation and Service employees who worked for Defendants in the United States at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Multi-State Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

121.    The Rule 23 Multi-State Class members are so numerous that joinder of all Rule

23 Multi-State Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Multi-State Class members. Rule 23 Multi-State Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

122.    There is a well-defined community of interest among Rule 23 Multi-State Class members and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Multi-State Class members. These common legal and factual questions include, but are not limited to:

      a.  Whether Rule 23 Multi-State Class members performed unpaid overtime work activities, and if so, whether such work activities are compensable;

      b.  Whether Rule 23 Multi-State Class members are owed wages for time spent performing overtime work activities, and if so, the appropriate amount thereof;

      c.  Whether Defendants' non-payment of wages for all compensable time constitutes breach of contract or unjust enrichment; and

      d.  Whether Rule 23 Multi-State Class members are owed overtime wages for improperly calculated overtime rates, due to the failure to use the properly calculated regular rate of pay for overtime payment, and if so, the appropriate amount thereof.

123.    Plaintiff's claims are typical of the Rule 23 Multi-State Class members' claims because Plaintiff and all other Rule 23 Multi-State Class members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Multi-State Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Multi-State Class members.

124.    Plaintiff will fully and adequately protect the Rule 23 Multi-State Class members' interests and retained counsel who are qualified and experienced in the prosecution of Multi-State wage-and-hour class actions. Neither Plaintiff nor his counsel has interests that are contrary to, or

conflicting with, the Rule 23 Multi-State Class members' interests.

125.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Multi-State Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

126.    This case will be manageable as a Rule 23 class action. Plaintiff and his counsel know of no unusual difficulties in this case, and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

127.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates*, 559 U.S. at 398 ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

<u>**COUNT I**</u>
<u>**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**</u>
<u>**29 U.S.C. § 201 *et seq.* – FAILURE TO PAY OVERTIME**</u>

128.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

129.    At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

130.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

131.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, were all non-exempt employees.

132.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

133.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g).

134.    At all times relevant to this action, Defendants required Plaintiff and the FLSA Collective to perform mandatory off-the-clock work activities, as described herein, but failed to pay these employees the federally mandated overtime compensation for the overtime work.

135.    The mandatory overtime work activities performed almost every shift by Plaintiff and the FLSA Collective were an essential part of their jobs, and these activities and the time associated with these activities were not *de minimis*.

136.    The Fair Labor Standards Action and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendants' non-discretionary bonuses and other remuneration do not fall into any of those exceptions.

137.    Defendants failed to include non-discretionary bonuses and other renumeration into the regular rate of pay for Plaintiff and all others similarly situated when calculating overtime rates. The failure to include this remuneration in overtime computations violates Section 7(a) of the FLSA, because Defendants' employees are working overtime without being paid the statutorily required rates. 29 U.S.C § 207(a).

138.    At all relevant times, Defendants maintained a policy and practice of willfully

refusing to pay Plaintiff and all FLSA Collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

139.     In workweeks where Plaintiff and other FLSA Collective members worked over 40 hours, the unpaid overtime, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly rate of pay, including non-discretionary bonuses and all other non-excludable remuneration. *See* 29 U.S.C. §§ 207(a) & (e).

140.     The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

141.     Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it took Plaintiff and the FLSA Collective members to perform their off-the-clock work. Further, Defendants could have easily accounted for and paid Plaintiff and the FLSA Collective members for these work activities but deliberately chose not to.

142.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated (i.e., double) damages, plus interest, costs, reasonable attorneys' fees, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

## COUNT II
## RULE 23 ILLINOIS CLASS ACTION
## VIOLATION OF ILLINOIS MINIMUM WAGE LAW ("IMWL"),
## §§ 820 ILCS 105/1, *et seq.* AND ILLINIOS WAGE PAYMENT AND COLLECTION ACT
## ("IWPCA"), §§ ILCS 115/1, *et seq.*

143.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

144.     At all times relevant to the action, Defendants were an employer covered by the

mandates of the IMWL, and Plaintiff and the Rule 23 Illinois Class were employees entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

145.    The IMWL, §§ 820 ILCS 105/1, *et. seq*. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of 40 per week. *See* §§ 820 ILCS 105/4; 820 ILCS 105/4a.

146.    820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

147.    The IWPCA "applies to all employers and employees in [Illinois], … but excepting employees of the State or Federal governments." *See* §§ 820 ILCS 115/1. Plaintiff and the Rule 23 Illinois Class were not employees of the State or Federal government; therefore, they are entitled to the protections of the IWPCA.

148.    Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

149.    Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

150.    As discussed herein, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Illinois Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law,

in consideration of the work duties Plaintiff and the Rule 23 Illinois Class members performed on Defendants' behalf.

151.    For example, Defendants offered to compensate Plaintiff at a base rate of $20.00 per hour, plus any overtime pay required by applicable law, if he agreed to perform services for Defendants as a Service Technician. Plaintiff accepted Defendants' offer and performed under the contract by fulfilling his duties as a Service Technician, which included, but was not limited to, the overtime work activities required, in reliance on the offer.

152.    Evidence of this contract includes Defendants' letters offering employment, the Defendants' Employee Handbook, pay statements, and other documentary evidence in Defendants' possession.   Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for processing work, which Plaintiff accepted and performed, including the unpaid overtime work activities described herein, but Defendants failed to perform by paying Plaintiff and the Rule 23 Illinois Class the promised wages for all work.

153.    Upon information and belief, each Rule 23 Illinois Class member, including Plaintiff, was contractually entitled to a base hourly rate within the applicable period, in addition to applicable overtime premiums.

154.    Plaintiff and every other Rule 23 Illinois Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with overtime work described herein.

155.    Defendants breached their contractual promises by failing to pay Plaintiff and the Rule 23 Illinois Class for all work performed.

156.    Plaintiff and the Rule 23 Illinois Class also did not receive accurate wage statements that detailed each hour worked and their rate of pay because Defendants failed to include the compensable time discussed herein in the paystubs provided to Plaintiff and the Rule 23 Illinois Class and improperly calculated Plaintiff's overtime rate by failing to use the proper regular rate.

157.    820 ILCS 115/9 prohibits "deductions by employers from wages or final compensation." Accordingly, in workweeks that Defendants unilaterally altered time records to exclude the overtime activities discussed herein, Defendants violated 115/9 of the IWPCA.

158.    Additionally, 820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

159.    Defendants violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint and at the proper overtime rate.

160.    As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

**COUNT III**
**RULE 23 MULTI-STATE CLASS ACTION**
**BREACH OF CONTRACT**

161.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further

alleges as follows.

162. At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Multi-State Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus overtime pay for hours worked over 40 in a workweek, in consideration of the work duties Plaintiff and the Rule 23 Multi-State Class members performed on Defendants' behalf.

163. For example, Defendants offered to compensate Plaintiff at a base rate of $20.00 per hour plus applicable overtime premiums if he agreed to perform services for Defendants as a Service Technician. Plaintiff accepted Defendants offer and performed under the contract by fulfilling their duties as a Service Technician, which included, but was not limited to, the overtime work activities required of him, in reliance on the offers.

164. Evidence of these contracts include Defendants' letters offering employment, pay statements, Defendants' Employee Handbook, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for processing work, which Plaintiff accepted and performed, including the unpaid overtime work activities described herein, but Defendants failed to perform by paying Plaintiff and the Rule 23 Multi-State Class the promised wages for all work.

165. Upon information and belief, each Rule 23 Multi-State Class member, including Plaintiff, was contractually entitled to a base hourly rate for all hours worked within the applicable period.

166. Plaintiff and every other Rule 23 Multi-State Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included

the unpaid off-the-clock work that was required of them in connection with overtime work described herein.

167.     Defendants breached their contractual promises by failing to pay Installation and Service Employees at their fixed, agreed upon hourly rate for *all* of the hours worked and for failing to pay Installation and Service Employees at their proper agreed upon overtime rate.

168.     By not paying Plaintiff and every other Rule 23 Multi-State Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein and for failing to properly pay overtime at the correct rate, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Multi-State Class.

169.     Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Multi-State Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift and underpaid overtime) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Multi-State Class member and any shift differentials, non-discretionary bonuses, premium pay and other renumeration that would create the regular rate that the overtime rate should be calculated through.

170.     Plaintiff and the Rule 23 Multi-State Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them ***more*** than the federally mandated minimum wage of $7.25 per hour, but less than 40 hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

171.     Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Multi-State Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

172.     As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Multi-State Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 MULTI-STATE CLASS ACTION**
**UNJUST ENRICHMENT**

173.     Plaintiff re-allege and incorporate all previous paragraphs herein and further allege as follows.

174.     This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

175.     At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Multi-State Class member a pre-established hourly rate in consideration of the work duties Plaintiff and the Rule 23 Multi-State Class members performed for the benefit of Defendants.

176.     Plaintiff and every other Rule 23 Multi-State Class member relied upon Defendants' promise for the pre-established hourly rate and performed by doing their jobs and carrying out their required work duties.

177.     Defendants received a benefit from the mandatory overtime work in that these services allowed Defendants to complete all agreed upon jobs scheduled daily and keep customer satisfaction.

178.     Despite this, Defendants did not pay the Plaintiff and the Rule 23 Multi-State Class members for these services.

179.     By not paying Plaintiff and every other Rule 23 Multi-State Class member the agreed upon hourly wage for the mandatory overtime work they performed before and after each shift, Defendants were unjustly enriched. Defendants were also unjustly enriched by failing to pay all wages owed to Plaintiff and the Rule 23 Multi-State Class by improperly calculating their

overtime rate by using the hourly rate instead of the proper regular rate.

180.   Plaintiff and the Rule 23 Multi-State Class members performed mandatory overtime work activities and overtime at the request of, without objection by, and for the benefit of, Defendants.

181.   Defendants received and accepted the overtime from Plaintiff and every other Rule 23 Multi-State Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

182.   Upon information and belief, Defendants used the monies owed but not paid to Plaintiff and every other Rule 23 Multi-State Class member to finance its various business ventures or pay equity owners.

183.   Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Multi-State Class members performed for Defendants' benefit, without having paid Plaintiff and the Rule 23 Multi-State Class members for the same.

184.   Plaintiff and the Rule 23 Multi-State Class members suffered detriment due to Defendants' failure to pay them for the mandatory overtime work activities described herein, in that Plaintiff and the Rule 23 Multi-State Class members were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

185.   As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Multi-State Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the putative FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Multi-State Class, request the following relief:

a.  An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.  An Order certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's state law claims under the IMWL and IWPCA (Count II);

c.  An Order certifying this action as a class action (for the Rule 23 Multi-State Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d.  An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

e.  An Order designating Plaintiff as a representative of the FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Multi-State Class, and undersigned counsel as class counsel for the same;

f.  A complete accounting of all the compensation Plaintiff and the others similarly situated are owed;

g.  An Order declaring Defendants violated the FLSA;

h.  An Order declaring Defendants' violations of the FLSA were willful;

i.  An Order declaring Defendants violated the Illinois wage statutes;

j.  An Order declaring Defendants breached their contracts with Plaintiff and the members of the Rule 23 Multi-State Class (or, in the alternative, that Defendants were unjustly enriched) by failing to pay them for mandatory overtime work activities described herein at a pre-established (contractual) regularly hourly rate;

k.  An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Multi-State Class the full amount of damages and liquidated damages available by law;

l.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

m.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n. An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury under Fed. R. Civ. P. 38.

Dated: February 24, 2025           Respectfully Submitted,

_/s/ Jesse L. Young_
Jesse L. Young
SOMMERS SCHWARTZ, P.C.
141 East Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
Telephone: (269) 250-7500
jyoung@sommerspc.com

Kevin J. Stoops
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com

Jonathan Melmed (_will petition for admission_)
Meghan Higday
MELMED LAW GROUP, P.C.
1801 Century Park E., Suite 850
Los Angeles, California 90067
Phone: (310) 824-3828
mh@melmedlaw.com
jm@melmedlaw.com

_Attorneys for Plaintiffs and the Putative_
_Collective/Class Members_